Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 4128 | DATE | October 1, 2002 |
| CASE TITLE | | SEC v. Householder | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

RE:

Householer's Objections to the Magistrate Judge's Report and Recommendation

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Householder's objections to Magistrate Judge Gerldine Soat Brown Report and Recommendation [30-1] are overruled.  The SEC's motion for a preliminary injunction [15-1] is GRANTED.

(11) ■ [For further detail see order attached to the original minute order]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 02 2002 date docketed | 40 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | G.Y. docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| RTS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**OCT 0 2 2002**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) ) | |
| Plaintiff, ) | Hon. Blanche M. Manning |
| ) v. ) ) | Magistrate Judge Geraldine Soat Brown |
| ROGER A. HOUSEHOLDER, et al., ) ) | Case No. 02 C 4128 |
| Defendants. ) ) | |

## MEMORANDUM AND ORDER

The United States Securities and Exchange Commission ("SEC") seeks a preliminary injunction against pro se defendant Robert A. Householder for violating federal securities laws. This court referred the motion for a preliminary injunction to a magistrate judge for an evidentiary hearing. Before the court are Householder's objections to Magistrate Judge Brown's Report and Recommendation ("R&R") recommending that the SEC's motion for a preliminary injunction be granted. For the following reasons, Householder's objections are overruled and Magistrate Judge Brown's R&R is adopted in its entirety.

### I. BACKGROUND

After the Magistrate Judge advised Householder of the difficulties of proceeding pro se, Householder represented himself at the preliminary injunction hearing instead of agreeing to a continuance to allow him to retain counsel. Householder did not produce any witnesses or exhibits and did not cross-examine the SEC's witnesses. After the evidentiary hearing, Magistrate Judge Brown concluded that: (1) Householder repeatedly committed material

40

violations of the federal securities laws; (2) Householder will continue to violate the law in absence of injunctive relief; and (3) irreparable harm will result if Householder is permitted to continue providing investment advice, offer securities, or dissipate his assets.

## II. FACTS

The R&R contains factual findings established during the evidentiary hearing, familiarity with which are presumed. *See SEC v. Householder*, 2002 WL 1466812 (N.D. Ill. July 8, 2002). Specific disputes over the Magistrate Judge's factual findings are discussed within the context of Householder's objections. Reviewing the Magistrate Judge's factual findings de novo, as required by 28 U.S.C. § 636(b)(1), the facts are as follows:

### A. HOUSEHOLDER AND RELATED ENTITIES

Householder is a licensed certified public accountant in the State of Illinois. Through his firm, Householder Accounting, an Illinois corporation, Householder provided accounting and tax advisory services. Testimonial and documentary evidence reveals that Householder also provided investment advisory services through Householder Accounting. The documentary evidence includes: (1) a check made out to Householder Accounting Services for $70,000 by investor Gloria Duday for the purpose of investing in United States Treasury notes; (2) a letter sent by Householder to Duday confirming the purchase of the United States Treasury notes on Householder Accounting Services' letterhead; and (3) correspondence from Householder to investor Joel Machak on Householder Accounting Services' letterhead.

Apex Capital Management Corporation is an Illinois corporation registered with the SEC as an Investment Adviser. Householder was integral in forming Apex Capital and served as its Director of Operations and Accounting Director. In addition, Householder signed Apex

2

Capital's annual report filed with the Illinois Secretary of State representing himself as the Secretary of Apex Capital.

Apex Limited Partnership is an Illinois limited partnership and hedge fund. At or around the time of the evidentiary hearing, Householder and Apex Capital were selling security interests in Apex Limited Partnership. Apex Capital is the sole general partner of Apex Limited Partnership and also serves as its Investment Adviser. Apex Limited Partnership provides investors with an opportunity to participate in Apex Capital's proprietary trading program.

Aapex Advisers was an Illinois corporation that registered with the SEC as an Investment Adviser in December 1998. Householder was the president of Aapex Advisers and was also one of the directors responsible for making investment decisions.

Householder organized Capital Enhancement LLC in June 1996 as an Illinois limited liability company. Evidence presented before the Magistrate Judge reveals that in December 1999 Householder confirmed Machak's investment of $430,000 in Capital Enhancement even though the records of the Illinois Secretary of State show that Capital Enhancement was dissolved in November 1997.

### B. HOUSEHOLDER'S PAST CONDUCT

#### 1. The Capital Enhancement Investment Scheme

Hearing evidence, including testimony by investor Joel Machak, established that Householder told his clients that Capital Enhancement was an investment fund that would pool his clients' investments to trade in securities. Householder advised Machak to invest $430,000 – the entirety of Machak's pension and profit sharing – in Capital Enhancement. Householder then wrote a confirmation letter to Machak that his funds had been invested in Capital Enhancement

3

and had achieved earnings of $21,822. Capital Enhancement, however, had already been dissolved. In fact, Householder diverted Machak's funds to Householder's bagel companies, Householder personally, Householder Accounting Services, and the Park Ridge Presbyterian Church.

Gloria Duday also testified at the evidentiary hearing. According to Duday, Householder had prepared her federal income taxes for fifteen years. In 1998, she discussed several of her Individual Retirement Accounts ("IRAs") with Householder. She told Householder that she wanted the IRAs consolidated into a conservative and safe investment, but wanted a little more return than they were generating. He recommended an investment in Capital Enhancement. In September and December of 1998, Duday allowed Householder to transfer her money from the IRAs to Capital Enhancement. Householder, however, diverted the funds provided by Duday to Heartland Bagels, Householder personally, and Householder Accounting Services.

Between October 1997 and January 1999, Householder offered and sold more than $1.22 million in interests in Capital Enhancement to fourteen advisory clients. Eleven of those fourteen investors, including Machak and Duday, followed Householder's suggestion to invest their retirement plan money in Capital Enhancement.

The Magistrate Judge concluded that Householder misrepresented the existence of Capital Enhancement, the use of the proceeds, the safety of the investment, and the value of the clients' interests in Capital Enhancement.

### 2. The Purchase of Treasury Bills for an Advisory Client

In 1999, Duday told Householder she wanted to invest in United States Treasury notes. In May 1999, Householder called Duday and told her that he had purchased Treasury notes for

4

her through Householder Accounting, but that he needed to replace the funds the next day. On Householder's direction, Duday wrote a check for $70,000 payable to Householder Accounting as payment for the Treasury notes. On May 28, 1999, Householder wrote Duday confirming the $70,000 purchase of Treasury notes. In fact, Householder deposited Duday's $70,000 check into the Householder Accounting account. He then used the money to pay himself, one of his bagel companies, and to make an interest payment to another investor.

### C. HOUSEHOLDER'S ONGOING CONDUCT

On December 7, 2001, Apex Capital was registered as an investment adviser with the SEC. Apex Capital was the sole General Partner of and sold interests in Apex Limited Partnership. In Apex Capital's SEC Form ADV – the required SEC registration form for Investment Advisers – Householder was listed as Apex Capital's "Accounting Director." In a May 20, 2002 letter to investor Paul Levy, Householder identified himself as the Director of Operations of Apex Capital.

The Confidential Private Offering Memorandum for Apex Limited Partnership that was provided to potential investors listed Householder as one of the principals of Apex Capital and detailed his qualifications and background. The offering memorandum did not reveal that in October 2000 the State of Illinois had issued an Order of Prohibition against Householder because he had violated Illinois securities laws. The order permanently prohibited him from offering or selling any securities in or from the State of Illinois or from rendering investment advice for a fee.

Householder's prior disciplinary history was also omitted from SEC Form ADV filed on December 7, 2001. Item 11.D of Form ADV required Apex Capital to disclose any state

regulatory investment-related violations or if a state regulatory agency had entered an order against the adviser or any advisory affiliate in connection with an investment-related activity.

At the evidentiary hearing, the SEC Senior Accountant testified that Householder had sold one partnership interest in Apex Limited Partnership for $150,000. In addition, Levy testified that he was never told of Householder's prior disciplinary history with the State of Illinois. Levy stated that had he known of Householder's history, he would not have invested in Apex Limited Partnership on behalf of himself, family members, or a pension plan fund.

The Magistrate Judge concluded that the failure to disclose the State of Illinois Order of Prohibition was an omission of material fact making Apex Capital's investment adviser registration with the SEC and the Private Offering Memorandum for Apex Limited Partnership materially misleading.

### III. STANDARD OF REVIEW

A federal district court is authorized to refer evidentiary hearings to a Magistrate Judge. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). Following the hearing, the Magistrate Judge does not enter a final judgment, but submits the proposed findings of fact and recommendations for disposition to the district judge, to which either party may file written objections within ten days. *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995). The district court then conducts a de novo review of the Magistrate Judge's R&R. *See* 28 U.S.C. § 636(b)(1); *see also Chicago Sch. Reform Board of Trustees v. Diversified Pharm. Serv., Inc.*, 40 F.Supp. 987, 990 (N.D. Ill. 1999). This de novo review is not the same as a de novo hearing – the district court is not required to conduct another hearing to review the Magistrate Judge's findings and credibility determinations. *See United States v. Raddatz*, 447 U.S. 667, 675 (1980); *Goffman*, 59 F.3d at 671. Rather, the

district court has the discretion to "accept, reject, modify, in whole or in part, the findings or recommendations made by the magistrate." *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). If upon reviewing the record the district court is satisfied with the Magistrate Judge's findings and recommendations, it may in its discretion treat those findings as its own. *See Raddatz*, 447 U.S. at 675.

The parties must raise all arguments to the Magistrate Judge in the first instance. *See United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000); *see also Alliance to End Repression v. City of Chicago*, 66 F.Supp.2d 899, 903 (N.D. Ill. 1999) (efficiency in judicial administration requires arguments be presented to Magistrate Judge first), *rev'd on other grounds*, 237 F.3d 799 (7th Cir. 2001). Therefore, arguments raised for the first time in an objection to an R&R are waived. *See Melgar*, 227 F.3d at 1040. With these principles in mind, the court reviews Householder's objections to the Magistrate Judge's R&R.

## IV. DISCUSSION

Householder's objections to the Magistrate Judge's R&R consist of approximately fourteen pages of numbered and unnumbered objections. Construing Householder's pro se objections liberally, Householder objects to the following:

### A. Investment Adviser Status

#### 1. Householder Accounting Services, Inc.

First, Householder argues that the evidence does not support the finding that he provided investment advisory services through Householder Accounting. Specifically, Householder argues that the check written by Duday to Householder Accounting, the confirmation letter to Duday on Householder Accounting letterhead, and the letter from Householder to Machak did

7

not contain references or reasonable inferences to investment advisory services. Thus, he claims, he did not offer investment advisory services through Householder Accounting.

Householder fails to recognize that these three documents cannot be analyzed in a vacuum. The hearing testimony of both Duday and Machak unequivocally establishes that Householder provided investment advisory services to them through Householder Accounting and that Householder's actions were not just incidental to his work as an accountant and tax preparer. Duday testified that she had originally approached Householder to be her tax preparer, but then she and Householder later discussed financial planning. Householder recommended and sold Duday United States Treasury notes through Householder Accounting and later confirmed her investment of $70,000 on Householder Accounting letterhead. In the letter, Householder also gave advice to Duday regarding the transfer of her funds from a Salomon Smith Barney investment account.

Machak testified that he had intended Householder to be his tax provider but wanted financial planning and investment advice as well. Householder recommended that Machak rollover his pension and profit sharing into a Capital Enhancement investment. Householder confirmed Machak's Capital Enhancement investment on Householder Accounting letterhead. The confirmation letter also explained various Y2K concerns. Despite Householder's contention that this letter was only about Machak's Y2K inquiry, it can be reasonably inferred from the testimony in tandem with the documentary evidence that Householder provided investment advisory services to Machak via Householder Accounting.

2. **Apex Capital Management Corporation**

Householder claims that the evidence does not support the finding that he was an

investment adviser or provided investment advisory services while he was employed by Apex Capital Management Corporation. Householder claims that although he was the Corporate Secretary of Apex Capital, his tasks were merely clerical or ministerial, therefore, he was not an investment adviser or "person associated with an investment adviser" under 15 U.S.C. §§ 80b-2(a)(11), (17). Section 80b-2(a)(17) states in pertinent part:

> The term "person associated with an investment adviser" means any partner, officer, or director of such investment adviser (or any person performing similar functions), or any person directly or indirectly controlling or controlled by such investment adviser, including any employee of such investment adviser....

In Apex Capital's Articles of Incorporation filed with the Illinois Secretary of State, Householder is listed as the initial registered agent and as the sole incorporator. Apex Capital's SEC Form ADV lists Householder as the Accounting Director and contact employee of Apex Capital. The hearing testimony of an SEC accountant reveals that Householder was integral in forming and running Apex Capital.

Based on this evidence, Householder's claim that his work for Apex Capital was clerical or ministerial fails. Householder had an integral part in forming and running Apex Capital, in addition to being the Accounting Director, Director of Operations, and Corporate Secretary. Therefore, the evidence clearly establishes that Householder was "a person associated with an investment adviser." *See* 15 U.S.C. § 80b-2(a)(17); *cf. United States v. Elliott*, 62 F.3d 1302, 1309-10 (11th Cir. 1996) (investment company officers who provided financial planning advice to individuals were considered investment advisers under the '40 Act).

### B.   AAPEX EQUITY ADVISORS, INC.

Next, Householder asserts that the evidence does not support the finding that Aapex

9

Advisors is presently registered with the SEC or is presently operating. He states that Aapex Advisors has not been in business for three years and that the SEC's mischaracterization of Aapex Advisors' active status undermines the Magistrate Judge's determination that his conduct was ongoing.

The Magistrate Judge did not rely on Householder's activities in conjunction with Aapex Advisors when determining that a preliminary injunction should be granted based on ongoing activity. Instead, the Magistrate Judge relied on the evidence of Householder's ongoing conduct of offering and selling interests in Apex Limited Partnership. Accordingly, Householder's argument concerning Aapex Advisors does not affect the Magistrate Judge's legal conclusion that irreparable harm would result if Householder was not enjoined from engaging in further securities violations.

### C. KNOWLEDGE OF CAPITAL ENHANCEMENT'S DISSOLUTION

Householder argues that the evidence does not support the conclusion that when he recommended investments in Capital Enhancement in 1999, he knew that Capital Enhancement had been dissolved in 1997. Householder's knowledge of Capital Enhancement's dissolution, however, is not dispositive to any of the Magistrate Judge's findings or conclusions.

What is relevant to the Magistrate Judge's conclusions is that Householder diverted Machak's and Duday's investment funds intended for Capital Enhancement to Householder's various bagel companies, Householder personally, Householder Accounting Services, and the Park Ridge Presbyterian Church. Householder knew his statements to the investors about Capital Enhancement were misrepresentations as evidenced by his diverting investors' funds to his own interests.

10

This evidence, alone, underscores his material misrepresentations to investors and establishes Householder's scienter as required under Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act. *See Aaron v. SEC*, 446 U.S. 680, 690-97 (1980); *see also Searls v. Glasser*, 64 F.3d 1061, 1065-66 (7th Cir. 1995). Therefore, Householder's knowledge or lack of knowledge regarding Capital Enhancement's dissolution does not affect the Magistrate Judge's factual findings or legal conclusions.

### D. SALES OF LIMITED PARTNERSHIP INTERESTS

Householder further argues that the evidence does not support the conclusion that he sold limited partnership interests or any other securities on behalf of Apex Capital or Apex Limited Partnership. Householder challenges the Magistrate Judges's findings based on the SEC Senior Accountant's testimony. The accountant testified that after he reviewed the subscription agreements regarding Apex Limited Partnership investments and talked to Houscholder, he concluded that Householder sold one partnership interest in Apex Limited Partnership for $150,000.

In his objections, Householder gives his version of the events leading up to the $150,000 investment and argues that the SEC should have called him as a witness on this matter. However, it is not the SEC's responsibility to establish Householder's defense. As discussed below, Householder was given many opportunities to hire an attorney and to present his case. Furthermore, Householder raises his version of the events for the first time in his objection. It is well-established that arguments raised for the first time in an objection to a R&R are waived. *See Melgar*, 227 F.3d at 1040.

### E. STATUS AS PRINCIPAL IN APEX LIMITED PARTNERSHIP

Householder claims that the Magistrate Judge's description of him as a "principal" in the private offering memorandum of Apex Limited Partnership has no relevance. Householder claims that it was not his decision to be included in the list of principals of Apex Capital and that he only did "back office" work for Apex Limited Partnership. Householder claims that the SEC should have called one of the "real" principals of Apex Capital Management Corporation to testify regarding Householder's status as a principal.

Once again, it is not the SEC's responsibility to establish Householder's defense. It was Householder's duty to proffer evidence that he was "an employee, plain and simple" as he claims in his objections. Last, this argument is waived because Householder raises it for the first time in his objections to the Magistrate Judge's R&R. *See Melgar*, 227 F.3d at 1040.

### F. STATE OF ILLINOIS ORDER OF PROHIBITION

Householder contends that his failure to reveal the State of Illinois disciplinary action in the Apex Limited Partnership offering memorandum and SEC Form ADV was not material to any investment in Apex Limited Partnership. Householder asserts that he did not prepare the Apex Limited Partnership offering memorandum, therefore, he was not responsible for the information provided. Householder, however, does not explain why the disciplinary action was omitted from SEC Form ADV.

Nevertheless, Householder takes issue with the materiality of his omission. He asserts that Levy's testimony that he would not have invested in Apex Limited Partnership had he known about Householder's disciplinary action is subjective, and thus, cannot support a finding of materiality under the objective standard set forth in *Basic v. Levinson*, 485 U.S. 224, 231-32

12

(1988).

Householder correctly states that the standard for materiality is an objective one. In *Basic,* the Supreme Court concluded that "to fulfill the materiality requirement 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* (citation omitted); *see also Searls,* 64 F.3d at 1065-66 (materiality depends on how it affects an investor's perception of the security interest). However, Householder's contention that this omission was not material is without merit.

Although the Magistrate Judge used Levy's testimony to illustrate the materiality of Householder's omission, other evidence supports the conclusion that this omission is material. The State of Illinois "Order of Prohibition" barred Householder from offering or selling securities or giving investment advice for a fee. In sum, Householder's livelihood was significantly restricted. He could not sell securities or give investment advice – the very actions that are the subject of this case. This is a serious disciplinary action to omit from a required SEC filing – a filing that directly asks whether the party has violated any state securities laws. Further, this omission from a private placement memorandum is relevant as well. This is not an instance where the omitted information is a small, tangential detail concerning a security interest that might be of interest to the investor. *See Anderson v. Abbott Labs.,* 140 F.Supp.2d 894, 903 (N.D. Ill. 2001). Instead, the omission of a Householder's disciplinary action barring him from offering and selling of securities and giving investment advice alters the "total mix" of information an investor would rely upon in making a financial investment. *See Searls,* 64 F.3d at 1066.

### G. WILLINGNESS TO ENTER INTO INJUNCTION

Householder takes umbrage with the Magistrate Judge's conclusion that he did not recognize his culpability or offer any assurances that he would not commit future securities violations. Householder contends that he told an SEC attorney that he would consent to the injunction if there were no asset freeze. Householder contends that if the Magistrate Judge would have asked him whether he would have consented to the injunction, he would have.

Once again, it is not the SEC's or the Magistrate Judge's responsibility to establish Householder's claims or defenses. He had the opportunity to present evidence – with or without an attorney – and chose not to do so. In addition, Householder's unwillingness to enter into an asset freeze undermines his contention that he would not commit future violations. Last, the Magistrate Judge relied on five other indicators, such as the gravity of harm caused by Householder's misappropriation of Machak's and Duday's entire life savings, in determining the likelihood of future securities violations.

### H. UNFAIR EVIDENTIARY HEARING

Last, Householder contends that the preliminary injunction hearing was inherently unfair and did not result in substantial justice. He contends that he is not a lawyer and did not know what he could or could not do at the evidentiary hearing. Further, he explains that he did not have the assets to hire an attorney to defend him.

However, Householder was given more than one opportunity to hire an attorney and was given permission to use funds to do so. *See* Judge Holderman's Minute Order, June 20, 2002, Docket #8. At the hearing, the Magistrate Judge explained to Householder that Judge Holderman exempted $2,500 from the asset freeze and that Householder had represented that $2,500 was the

retainer fee requested by his attorney. *See* Evidentiary Hearing Transcript at 11-12, July 2, 2002, Docket #26. Nonetheless, Householder claimed that $2,500 was not enough money to secure his attorney. In addition, this court granted Householder permission for use of funds to retain an attorney for the proceedings after the evidentiary hearing, yet Householder has failed to do so. *See* Order, July 8, 2002, Docket #19.

The record also reflects that Householder was given notice of the evidentiary hearing and other proceedings in this matter. Before the preliminary injunction hearing, the Magistrate Judge asked Householder if he understood the difficulties of representing himself and he replied yes and then proceeded pro se. *See* Evidentiary Hearing Transcript at 7, July 2, 2002, Docket #26.

Because Householder has failed to retain an attorney at any stage of this case even when he has been afforded the opportunity to do so, he cannot claim he was denied a fair evidentiary hearing based on his own decision not to retain counsel.

## V. CONCLUSION

Householder's objections to Magistrate Judge Gerldine Soat Brown Report and Recommendation [30-1] are overruled. The SEC's motion for a preliminary injunction [15-1] is GRANTED.

ENTER:

BLANCHE M. MANNING
U.S. DISTRICT COURT JUDGE

DATE: OCT 0 1 2002

15