

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) | |
| **Plaintiff,** | ) | **Case No. 02 C 4128** |
| **v.** | ) | **Judge Blanche M. Manning** |
| **ROGER HOUSEHOLDER, et al.,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

The following motions are before the court: Kate Householder's motion to intervene and for release of funds, and Darlene DeMent's motions to intervene and for a turnover order. For the reasons stated in this memorandum and order, the motions to intervene are granted and the motions for release of funds and for a turnover order are denied.

**Background**

These background facts are taken from Darlene DeMent's motion for turnover order and from the Securities and Exchange Commission's ("SEC") response to Darlene DeMent's motions to intervene and for a turnover order. The SEC filed this action against Roger Householder ("Roger") and associated entities alleging that Householder had defrauded former clients through a variety of fraudulent schemes. Intervenor and counterplaintiff Darlene DeMent ("DeMent") was one of Householder's clients. DeMent and other clients obtained judgments

from the United States Bankruptcy Court against Householder on January 21, 2001.[1] On or about May 23, 2003, DeMent filed a memorandum of judgment against Householder's family home, which was held in tenancy by the entirety at the time. DeMent's judgment in the amount of approximately $91,000 was entered against Roger Householder only.

At the inception of the current action, the court granted the SEC's motion for a temporary restraining order and other relief against Householder. The order included a freeze on all of Householder's assets so that they could be preserved for future disgorgement to Householder's victims. On July 29, 2004, Householder moved the court to modify the preliminary injunction to permit Householder to sell the residence he owned with Kate in tenancy by the entirety ("Property"). Householder signed a settlement agreement with the SEC offering to pay the proceeds as disgorgement. Accordingly, the court granted Householder's request to sell the Property, but ordered that 50% of the proceeds of the sale representing Roger's share be deposited with the clerk of the court for the benefit of Householder's judgment creditors. After the sale, $82,968.87 was deposited with the court. All of the parties acknowledge that this amount represents more than 50% of the net proceeds from the sale. Specifically, the $82,968.87 in escrow with the clerk of the court is made up of Householder's share of the net value of the Property, $56,870.49, plus $26,098.38 in additional proceeds claimed by both DeMent and Kate Householder in the motions currently pending before the court.

Darlene DeMent seeks to intervene in this action to obtain all of the Escrow Funds for herself pursuant to her memorandum of judgment filed May 23, 2003. According to Kate, who

[1]According to the SEC, the claims that it and Householder's advisory clients filed against Householder during his bankruptcy were exempted from discharge by an agreed order entered by the bankruptcy court.

also seeks to intervene, the additional $26,098.38 represents funds she paid on Roger's behalf to pay off a third mortgage prior to the sale of the Property.

*Kate Householder's Motions*

Before the sale of the Property as authorized by this Court, the Property was the subject of a mortgage foreclosure proceeding in state court. Pursuant to a judgment of foreclosure entered in that case, the Property was scheduled for a sheriff's sale on or about June 28, 2004. However, in order to prevent the sheriff's sale, the Householders took out a third mortgage with Sherwin Real Estate, Inc. ("Sherwin Mortgage"), secured by the Property, in order to pay off their first mortgage.

Subsequently, at the closing on the sale of the Property, counsel for DeMent objected to Roger Householder using his proceeds to pay his share of the Sherwin mortgage. Accordingly, in order to allow the sale of the Property to proceed, Kate agreed to pay Roger's portion of the Sherwin Mortgage ($26,098.38) with her proceeds from the sale, provided that she be allowed to seek reimbursement from this court for that amount. According to Kate, had she not agreed to pay off the Sherwin Mortgage with her funds, the Property would have gone to sheriff's sale and "no proceeds from the sale would have remained for the benefit of any parties claiming an interest thereto." The SEC states that it asserts no interest in these funds claimed by Kate Householder, and takes no position on her motion for release of these funds.

*Darlene DeMent's Motions*

DeMent seeks a turnover of all of the funds held in escrow by the clerk of the court. As an initial matter, the court notes that DeMent fails to include any citations to authority in her motion or reply. Thus, this court will consider her motion within the context of her failure to

provide any support for her legal argument.

As noted above, DeMent recorded her judgment for approximately $91,000 at the Cook County Recorder's office on May 23, 2003. Two mortgages were recorded against the Property at the time that DeMent recorded her judgment and DeMent does not dispute that those two mortgages have priority over her judgment lien. DeMent states that an additional mortgage, which she calls the "Junior Mortgage," was recorded against the Property subsequent to the recording of her judgment lien. While DeMent does not state that the "Junior Mortgage" is the Sherwin Mortgage, the court assumes that it is. Further, although "DeMent assert[s] that she ha[s] an interest superior to that of Kate and Roger and the Junior Mortgage in the real estate and the proceeds of the sale thereof to the extent of one-half the gross proceeds after satisfaction of the first and second mortgages," DeMent fails to specify the exact amount she is seeking.

DeMent further states that she was informed that the SEC was going to seek turnover of the entire net proceeds of the sale, but contends that her interest is superior to that of the SEC because (i) the SEC did not record its interest in the Cook County real estate records, and (ii) the court order did not prohibit Roger from voluntarily transferring his real estate nor did it "on its face" prohibit DeMent from recording her judgment lien or enjoin any involuntary transfer of the real estate.

As to Kate's asserted interest, DeMent contends that if the court were to hold that Kate's interest were superior to hers, it "would be to in effect permit the Junior Mortgage holder [Sherwin], who recorded his mortgage at a time when it knew, or had constructive knowledge of, DeMent's lien upon the real estate to, in effect, jump over DeMent's interest to become superior to that of DeMent without DeMent's consent or approval." DeMent also asserts that because the

Junior Mortgage was a joint and several obligation of Kate and Roger, Kate was liable to pay any portion of the debt that Roger could not pay.

## **Discussion**

### A. *Motions to Intervene*

DeMent has filed a motion to intervene as of right pursuant to Federal Rule of Civil Procedure ("Rule") 24(a). Rule 24 provides that a party is entitled to intervene in an action when a statute of the United States confers such a right or "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed.R.Civ.P. 24(a). Because there is no federal statute authorizing intervention as of right, DeMent must seek intervention as of right under Rule 24(a)(2). To proceed under this section, the applicant must show that: "(1) the application is timely; (2) the applicant has an 'interest' in the property or transaction which is the subject of the action; (3) disposition of the action as a practical matter may impede or impair the applicant's ability to protect that interest; and (4) no existing party adequately represents that interest." *Security Ins. Co. of Hartford v. Schipporeit*, 69 F.3d 1377, 1380 (7th Cir. 1985).

The court finds that DeMent has satisfied these requirements. DeMent seeks the turnover of funds from the sale of defendant's house and her application was filed soon after that sale. DeMent has a direct interest in the funds obtained from that sale given that she is a judgment creditor of defendant and the disposition of this action could impair or impede her ability to receive the funds she contends she is entitled to. Finally, no other party adequately represents her

interest. Further, Dement followed the proper procedure for seeking to intervene by filing a motion stating the grounds for the application and a counterclaim setting forth her claim as to the proceeds of the sale of the Property. Fed.R.Civ.P. 24(c). Accordingly, DeMent's motion to intervene as of right is granted.

Kate Householder also seeks leave to intervene and states that she "meets all of the requirements under Federal Rule of Civil Procedure 24(a) for *permissive* intervention." However, Rule 24(a) governs intervention as of right, and because Kate refers to at least some of the elements of Rule 24(a), the court interprets her request to intervene as one of right and not for permissive intervention. The court notes that Kate failed to file a pleading in support of her motion to intervene as required by Rule 24(c). However, "if no prejudice would result, a district court has the discretion to accept a procedurally defective motion." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 595 (7th Cir. 1993). Because Kate has met the requirements for intervention as of right for the same reasons as DeMent, and the court finds no prejudice would result, the court grants Kate's motion for leave to intervene as of right.

B. *Motions for Turnover Orders*

The parties do not dispute that DeMent recorded a memorandum of judgment against the Property on May 23, 2003. However, the question is the effect of the recorded judgment on the interests of the SEC and Kate Householder.

Section 5/12-112 of the Illinois Code of Civil Procedure governs the enforcement of judgment liens. It states in part:

> Any real property, . . . , held in tenancy by the entirety shall not be liable to be sold upon judgment entered on or after October 1, 1990 against only one of the tenants, except if the property was transferred into tenancy by the entirety with the

sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor's ability to pay those debts as they become due.

In general, assuming a valid tenancy by the entirety existed on the property, DeMent's lien could not have attached to the property. *E.J. McKernan v. Joseph Gregory*, 268 Ill. App. 3d 383, 388 (2d Dist. 1994) ("Tenancy by the entirety has two important distinguishing features: it is available only to married couples, and property held by the entirety may not be attached by the creditor of only one spouse."), *recognizing abrogation on other grounds*, *Premier Property Mngt., Inc. v. Chavez*, 191 Ill. 2d 101 (Ill. 2000). Further, because DeMent could not legally force a sale of the property under this statute, DeMent could not have filed a valid judgment lien against the Property because Illinois does not recognize the validity of unenforceable liens. *Lehman v. Cottrell*, 298 Ill. App. 434, 441 (2d Dist. 1939) (stating that a lien of judgment is "almost universally regarded as arising from the right to sell the property thereunder. Hence, where the right of sale cannot be asserted, the existence of the lien must be denied."); *Rochford v. Laser*, 91 Ill. App. 3d 769, 774-75 (2d Dist. 1980) (as to a membership on a trading exchange, finding that "where the right of sale cannot be asserted, the existence of the lien must be denied"); *In re Allard*, 196 B.R. 402, 409-10 (Bankr. N.D. Ill. 1996).[2] Accordingly, assuming a

---

[2]The court acknowledges that one court has stated in dicta that "the courts of Illinois may find that a lien against the contingent future interests of an individual tenant by the entirety arises from the recording of a judgment against that tenant only." *In re Chinosorn*, 243 B.R. 688, 696 (N.D. Ill. 2000), *rev'd on other grounds*, 248 B.R. 324 (N.D. Ill. 2000). The court noted that Illinois courts had not specifically ruled on the issue of whether "any lien on the interests of a tenant by the entirety results from a judgment against that tenant individually." *Id.* at 695. The *Chinosorn* court stated that when the Illinois legislature "has determined that a judgment lien should not be created as to a debtor's interests in particular property, it has provided that the property is 'exempt from judgment,'" which it did not do in the relevant statute as to the tenancy by the entirety. The court concluded that recognizing a lien, which would apply only to the contingent future interest of an individual tenant, would provide for the "orderly priority of claims, eliminating the potential for a scramble of creditors trying to be first to enforce their

valid tenancy by the entirety, DeMent's May 23, 2003 judgment lien was not valid and she would have no rights over Kate or the SEC to the proceeds of the sale of the Property as to that judgment lien.

DeMent, however, contends that the tenancy by the entirety was invalid for two reasons. First, she asserts that Kate and Roger were no longer living together as husband and wife and had begun divorce proceedings at the time of the sale of the Property. Second, DeMent argues that the tenancy by the entirety was created for the sole purpose of avoiding debts, and thus was invalid.

DeMent's first argument fails because the relevant statute, 765 ILCS 1005/1c, provides that a tenancy by the entirety will, by operation of law, turn into a joint tenancy, "upon a dissolution of marriage or of declaration of invalidity of marriage." While DeMent seeks discovery on this matter, DeMent has offered no evidence at all that the parties' marriage was legally dissolved at any time prior to the sale of the Property. Assuming the Householder's marriage was legally dissolved at the time of the sale, Dement could have obtained proof of same from the state court record, but did not do so. Accordingly, the court rejects DeMent's claim that the tenancy by the entirety was invalid because Kate and Roger were not living together as husband and wife at the time of the sale of the Property.

DeMent also claims that the tenancy by the entirety was entered into solely to protect the asset from creditors, but fails to proffer any evidence in support. In lieu of actual evidence, DeMent seeks discovery in support of this argument. DeMent contends that, according to the

---

judgments at the end of the tenancy." *Id.* at 696. However, given that property interests are determined under Illinois law, and Illinois courts have held that where a right of sale does not exist, neither does a lien, this court will follow those Illinois cases.

SEC, Householder began his fraudulent scheme in 1991, but he and Kate did not purchase the Property as tenants in the entirety until 1998, when he was aware of the liabilities from his fraud. Thus, DeMent argues, the tenancy by the entirety could be invalid.

However, the statute specifically states that property shall not be sold upon judgment entered against only one of the tenants, "except if the property was transferred into tenancy by the entirety with the sole intent to avoid the payment of *debts existing at the time of the transfer beyond the transferor's ability to pay those debts as they become due*." 735 ILCS 5/12-112 (emphasis added). Even if the Householders purchased the Property at a time when Householder was engaged in a fraudulent scheme, there is no indication that there were resulting debts existing at the time of the transfer (i.e, 1998) beyond Householder's ability to pay those debts as they became due. Indeed, according to the parties, the victims of Householder's fraud did not obtain judgments against Householder until 2001. Accordingly, because any rights that DeMent has to seek sale of the Property in order to enforce her judgment are statutory in nature and DeMent has failed to show that her judgment attached to the Property held in tenancy by the entirety, DeMent has no right to Roger Householder's portion of the proceeds from the sale of the Property.

The next question then is what are Kate and Darlene DeMent's rights as to the $26,098.38 Kate paid to Sherwin Mortgage on behalf of Roger Householder. As the court has established, Darlene DeMent's recorded judgment lien did not attach to the Property. As for Kate, she acknowledges that the Sherwin Mortgage was a joint liability as to her and Roger, and that Kate agreed to pay Roger's portion in order to facilitate the sale of the Property. Kate contends that she paid Roger's portion of the Sherwin Mortgage in order to cause the Closing to

occur, and had she not done so, the Property would have been sold at a sheriff's sale and it is likely that no funds would have been left over for the benefit of Householder's victims. Thus, Kate argues, she is entitled to the funds as a matter of equitable or conventional subrogation.[3]

As an initial matter, this court does not agree with Kate's argument that had Kate not paid off the Sherwin Mortage in full at the Closing, the property would have been sold at a sheriff's sale. According to Kate, the whole purpose behind taking out the Sherwin Mortgage was to pay off the mortgagee that had instituted foreclosure proceedings against the Property. Thus, the court assumes that the foreclosing mortgagee had already been fully paid by the funds from the Sherwin Mortgage, and no sheriff's sale was imminent.

Second, it is not clear from the filings that subrogation is applicable in this case. Generally, "subrogation is a method by which one party involuntarily pays a debt of another and succeeds to the rights of the other with respect to the debt paid." *Union Planters Bank, N.A. v. FT Mortgage Cos.*, 794 N.E.2d 360, 364 (Ill. App. Ct. 2003). Illinois has recognized two types of subrogation: (1) common law or equitable and (2) contractual or conventional. *Id.* "Although conventional subrogation is seen sporadically in Illinois case law, equitable subrogation is even more elusive." *Aames Capital Corp. v. Interstate Bank of Oak Forest*, 734 N.E.2d 493, 498 (Ill. App. Ct. 2000). It is clear from the briefs that Kate Householder did not pay the "debt of another" such that the principle of subrogation would even apply because Kate was as equally liable for the Sherwin Mortgage as Roger. Further, as to *conventional* subrogation, it definitely cannot apply here as it requires an "express agreement between the parties to the effect that the

[3]Kate cites to no specific caselaw in support, but only to a local bar journal article and the *Restatement (Third) of Property*: Mortgages §7.6 (1996).

party paying the debts on behalf of the third party will be able to assert the rights of the original creditor." *Id.* at 925. No express agreement has been discussed.

Accordingly, because neither Darlene DeMent nor Kate Householder has shown a right to these funds, they will remain with the Clerk of the Court until further notice.

**Conclusion**

Darlene DeMent's and Kate Householder's motions to intervene are granted. Kate Householder is given 21 days from the date of this order to file a pleading pursuant to Fed. R.Civ.P. 24(c). Darlene DeMent's and Kate Householder's motions for turnover order and release of funds, respectively, are denied.

**DATE:** 2-2-05

Blanche M. Manning

**Blanche M. Manning**
**United States District Judge**